Dear Mr. Maygarden,
You have requested an opinion of this office regarding the consolidation of the Orleans Parish Board of Assessors into an office of a single assessor. It is your interpretation of the law that the term of the current Orleans Parish Board of Assessors ends on May 3, 2010 and the term of the new single Assessor for Orleans Parish does not begin until December 31, 2010. This would mean that a seven month gap exists between the ending of the terms of the current assessors and the beginning of the term of the single Orleans Assessor elected in 2010.
Act No. 863 § 1 of the 2006 Regular Session of the Louisiana Legislature amended La.Const. art. VII, Sec. 24 to delete the authorization for seven assessors in Orleans Parish and to provide for a single assessor. The constitutional amendment was approved by the voters on November 7, 2006. La.Const. art. VII, Sec. 24 now provides:
 (A) Election; Term. A tax assessor shall be elected by the electors of each parish. His term of office shall be four years. His election, duties, and compensation shall be as provided by law.
 (B) Orleans Parish. The assessor shall be elected at the same time as the municipal officers of New Orleans. *Page 2 
 (C) Vacancy. When a vacancy occurs in the office of tax assessor, the duties of the office, until filled by election as provided by law, shall be assumed by the chief deputy assessor.[1]
La.Const. art. VII, Sec. 24(A) previously contained an exception for Orleans Parish and La.Const. art. VII, Sec. 24(B) previously provided:
 (B) Orleans Parish. There shall be seven assessors in New Orleans, who shall compose the Board of Assessors for Orleans Parish. One shall be elected from each municipal district of New Orleans, and each shall be a resident of the district from which he is elected. The assessors shall be elected at the same time as the municipal officers of New Orleans, for terms of four years each. Their duties and compensation shall be as provided by law.
According to the Secretary of State's Office, the last election in which municipal officers for the City of New Orleans were elected took place on April 22, 2006. A general (runoff) election was held May 20, 2006. The next local municipal election in Orleans Parish will take place on February 6, 2010 (with a runoff election, if necessary, on March 6, 2010). Pursuant to Section 3-102 and 4-201 of the New Orleans City Charter, the mayor and city council will take office on the "first Monday in May next following their election," i.e., May 3, 2010. Under the old law (i.e., La.Const. art. VII, Sec. 24(A)), the newly elected assessor would take office at the same time. However, La.R.S. 47:1901(B) provides a different date for the newly elected assessor to take office. It provides:
 At the local municipal election held every four years, there shall be elected in Orleans Parish by the qualified voters thereof, one tax assessor, who shall hold office for four years from and after the thirty-first day of December of the year in which he is elected.[2] *Page 3 
Thus, as a result of the change in the law governing Orleans Parish assessors, the seven assessors currently in office will complete their terms on May 3, 2010, but the new assessor will not begin his four year term until January 1, 2011. In light of these revisions to the law, and the resulting seven month gap between the end of the term of the seven assessors and beginning of the single assessor's term, you have asked us to address the following:
 (1) Does the Orleans Parish Board of Assessors cease to exist as of May 3, 2010?
 (2) Do the Municipal Districts of Orleans Parish cease to exist as of May 3, 2010?
 (3) By what legal mechanism will an executive for the office of the Orleans Assessor assume authority between May 3 and December 31, 2010?
 (4) After May 3, 2010, who has authority over funds held by the Orleans Parish Board of Assessors?
 (5) After May 3, 2010, who has authority over funds held separately by the individual Assessors for the Municipal Districts of Orleans Parish?
 (6) All employees of the Orleans Parish Board of Assessors or the individual Municipal District Assessors are at-will employees of either the Board or the individual Assessors and have no civil service status. What will be the status of District employees after May 3, 2010?
It is the opinion of this office that in light of our conclusion that there exists no vacancy in the seven assessors' offices under the facts provided, the governing statutory provision for most of your questions is La.R.S. 42:2, which provides that "[e]very public officer in this state except in cases of impeachment or suspension, shall continue to discharge the duties of his office until his successor is inducted into office." In this case, the legislature has changed the number of assessors in Orleans Parish from seven to one. Since none of the seven assessors were impeached or suspended, La.R.S. 42:2 requires them to continue to discharge the duties of their offices until the new, single assessor is inducted into office.
This interpretation is consistent with previous opinions from the Attorney General's office. La. Atty. Gen. Op. No. 08-0014 addressed legislation that changed the composition of the Board of Directors of the Louisiana Citizens Property Insurance Corporation. The legislation changed the qualifications of some board members and some board members failed to meet the new qualifications. The opinion concluded that pursuant to La.R.S. 42:2, "[a]lthough the qualifications have now been amended, such that some of them may no longer be qualified to serve, they shall continue to serve until their successors are appointed." *Page 4 
La. Atty. Gen. Op. No. 96-1 addressed issues relating to the enactment of Act 1032 of 1995. This Act changed the composition of the Atchafalaya Basin Levee District by reducing the number of appointed members from the Parish of Terrebonne from three members to one member. In this opinion, our office stated that under the authority of La.R.S. 42:2, until the governor appointed the members of the new board, the present members would continue to hold office. Despite the fact that two members from the Parish of Terrebonne would no longer be qualified to serve the District after the effective date of Act 1032, our office was of the opinion that the three members from Terrebonne Parish should continue to serve until the new appointments were made by the governor.
A similar situation was addressed in Miller v. Oubre, 96-2022 (La. 10/15/96), 682 So.2d 231. In Miller, the St. Charles Parish Government decided to redraw justice of the peace and constable district lines to create new justice of the peace and constable districts. The Louisiana Supreme Court held that redistricting was a function of the legislature and that the parish drawn districts were created in violation of the constitution. Miller, 682 So.2d at 237. The Court then addressed what to do with the justices of the peace and constables who were sitting in unconstitutionally drawn seats. The court stated,
 . . . it would be contrary to our democratic system to remove these public officials from their elected positions at this juncture and deprive the electorate of its chosen representatives, especially considering that the six justice of the peace offices have long existed . . . Further La.R.S. 42:2 provides: `Every public officer in this state except in the case of impeachment or suspension, shall continue to discharge the duties of his office until his successor is inducted into office.' As the incumbent justices of the peace and constables have been neither impeached nor suspended, they shall remain in office until such time as their successors are elected from legally drawn districts and inducted into office.
Id. Though there is no lack of qualification or unconstitutionally drawn districts under the facts you provided, the reasoning applied by this office in prior opinions and by theMiller court is nonetheless pertinent to your issue. If the seven assessors currently serving did not continue to serve in their respective offices through January 1, 2010, the people of Orleans Parish would be left without an assessor for seven months because the new assessor would not have taken office yet.
In response to your first and second questions, whether the Orleans Parish Board of Assessors and the Municipal District of Orleans Parish cease to exist as of May 3, 2010, the answer is no. Under La.R.S. 42:2, until the single assessor is inducted into office on January 1, 2011, and thereby replaces the seven *Page 5 
assessors, the seven assessors currently elected must continue to serve in their offices. The Orleans Parish Board of Assessors and the Municipal District of Orleans Parish will cease to exist at 12:01 a.m. on January 1, 2011.
Your third question asks how "an executive for the office of the Orleans Assessor assume authority between May 3 and December 31, 2010." The answer is that, under the authority of La.R.S. 42:2, the seven assessors currently in office will continue to serve in their respective offices until the new assessor is inducted into office.
Your fourth and fifth questions concern who has the authority over funds held by the Orleans Parish Board of Assessors and over funds held separately by the individual Assessors for the Municipal Districts of Orleans Parish after May 3, 2010. Based on the application of La.R.S. 42:2 as discussed above, the assessors currently in office will continue to have authority over the funds held by them until the single assessor takes office on January 1, 2010. The same is true of funds held by the Orleans Parish Board of Assessors. Once the new assessor is inducted into office, he or she will have authority over all funds currently held by the seven assessors and the Orleans Parish Board of Assessors.
Finally, your request states that "[a]ll employees of the Orleans Parish Board of Assessors or the individual Municipal District Assessors are at-will employees of either the Board or the individual Assessors and have no civil service status" and asks what these employees' status will be after May 3, 2010. Because the seven assessors currently in office will remain in office through December 31, 2010, those assessors will have to decide whether to keep employees on staff. Once the new assessor takes office, all employees of the Orleans Parish Board of Assessors and of the individual Municipal District Assessors will no longer be employed by these agencies because the agencies will cease to exist. At that time, the newly elected assessor will have the authority to decide who to hire in his office.
We note that the 2010 legislative session is scheduled to convene on March 29, 2010. If the legislature enacted legislation during the 2010 session dealing with the seven month gap that currently exists between the end of the term of the seven assessors and beginning of the single assessor's term, then the new, specific legislation would apply and La.R.S. 42:2 would no longer be the governing statute. *Page 6 
We trust this adequately responds to your request. However, if our office can be of further assistance, please do not hesitate to contact us.
 Yours very truly,
 JAMES D. "BUDDY" CALDWELL
 Attorney General
 By: __________________________
 Lindsey K. Hunter
 Assistant Attorney General
 JDC/LKH/crt
 cc: Kenneth E. Pickering
[1] In the instant matter, a vacancy has not been created under La.Const. art. X, Sec. 28, which defines a vacancy in office as follows: "A vacancy, as used in this Constitution, shall occur in the event of death, resignation, removal by any means, or failure to take office for any reason." The Election Code, La.R.S. 18:1, et seq., also defines a vacancy. It provides that a "`[v]acancy' occurs in an elective office when the office is or will be unoccupied by reason of the death of the official who was elected to the office, or by reason of his retirement or resignation, removal from office by any means, failure to take office for any reason, or when it becomes certain that the person elected to the office will not take the office on the day when the term for which he was elected commences, or when the person elected to or holding the office no longer meets the residence or domicile requirements of that office, any declaration of retention of domicile to the contrary notwithstanding, or when an office is created due to a reclassification of a municipality." La.R.S. 18:581(3).
[2] See La. Atty. Gen. Op. No. 95-57, which interpreted "four years from and after the thirty-first day of December of the year in which he is elected" to mean that the new term commences on January 1 of the fifth year. See also La. Atty. Gen. Op. No. 83-831.